1

2

3

4

5

6

7

8    UNITED STATES DISTRICT COURT
     WESTERN DISTRICT OF WASHINGTON
9    AT TACOMA

10   SHERRII CLARK,

11                    Plaintiff,                    CASE NO. 12-cv-05133-RJB-JRC

12   v.                                             REPORT AND RECOMMENDATION
                                                    ON PLAINTIFF'S COMPLAINT
13   MICHAEL J. ASTRUE, Commissioner
     of the Social Security Administration,         Noting Date:  January 4, 2013
14

15                    Defendant.

16

17         This matter has been referred to United States Magistrate Judge J. Richard

18   Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR

19   4(a)(4), and as authorized by *Mathews, Secretary of  H.E.W. v. Weber*, 423 U.S. 261,

20   271-72 (1976).  This matter has been fully briefed (*see* ECF Nos. 10, 11, 12).

21         The Administrative Law Judge ("the ALJ") did not provide specific and legitimate

22   reasons for rejecting the examining physician's opinion that plaintiff was capable only of

23   lifting 5 to 10 pounds and that plaintiff could sit, stand or walk up to 20 minutes at a time.

24

Instead, the ALJ found that plaintiff could lift up to 20 pounds, and could be expected to stand or walk for up to 5 hours a day and to sit for 5 to 6 hours a day.  Also, the ALJ did not provide specific and legitimate reasons for rejecting the examining psychologist's opinions regarding plaintiff's ability to perform sustained work activities, given her mental impairments.  Instead, the ALJ performed his own evaluation of plaintiff's mental status examination findings, improperly substituting his conclusions over the examining psychologist's.  For these reasons, and based on the relevant record, the Court recommends that this matter be reversed and remanded pursuant to sentence 4 of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings.

<u>BACKGROUND</u>

Plaintiff, SHERRII CLARK, was 37 years old when she applied for disability benefits in 2007 (Tr. 172).  She received her GED in 1999 (Tr. 51).

Although she worked sporadically, she never was able to hold a job for more than a few weeks (Tr. 204).  She worked in minimum wage positions including, among other things, cleaning and a grocery store cashier (Tr. 204, 210).  The ALJ found that she had a number of severe physical and mental impairments.  Her physical impairments included osteoarthritis, degenerative disc disease and carpal tunnel syndrome (Tr. 21).  Her mental impairments included anxiety disorder, not otherwise specified, post traumatic stress disorder, obsessive compulsive disorder and panic attacks with agoraphobia (*id.*).

She received treatment from various providers mostly associated with Group Health Cooperative (Tr. 22, *see generally* Tr. 330-35, 633-61).  A review of the record makes it clear that she regularly presented with "a plethora of complaints" (Tr. 272)

1   including pain in her arms, legs, neck, hands, and spine; chest wall discomfort; low back

2   pain; and knee give-way (Tr. 273).  She also had received treatment for mental disorders

3   including panic disorder and agoraphobia (Tr. 279-86).  The records do not indicate any

4   evidence of malingering (Tr. 316).

5       At the request of the Social Security Administration, Mark Heilbrunn, M.D. ("Dr.

6   Heilbrunn") examined plaintiff and prepared a "disability evaluation" (Tr. 374-80).

7   Among other things, Dr. Heilbrunn diagnosed fibromyalgia, lumbar lodosis, thoracic

8   scoliosis, cervical kyphosis, bilateral carpel tunnel syndrome, and bilateral knee

9   osteoarthritis, status post right knee injury (Tr. 378).  He performed a functional

10  assessment and concluded that plaintiff was able to lift 5 to 10 pounds on a frequent basis

11  and could be expected to sit for 20 minutes uninterrupted for an accumulative length of

12  time of 5 to 6 hours out of 8 hours.  She only could stand and walk for 15 to 20 minutes

13  uninterrupted for a cumulative 5 out of 8 hours (Tr. 379).

14

15      Her medical records also were sent to state reviewing physicians for evaluation

16  (*see* Tr. 401-408, Tr. 476).  It is unclear which records were sent to these reviewing

17  physicians and there is only specific reference to a few records (*see* Tr. 408).  By

18  checking the box, this evaluating physician concluded that she occasionally could lift 20

19  pounds and frequently could lift 10 pounds; that she could stand and/or walk at least 2

20  hours in an 8 hour work day and sit with normal breaks for about 6 hours in an 8 hour

21  work day (Tr. 402).

22      Regarding claimant's mental impairments, plaintiff began treatment with a

23  psychiatrist, Roy Clark, M.D., in 2006 for a panic disorder and agoraphobia (Tr. 279-86).

24

1    In September, 2007, she received a mental examination from Daniel Niems, Psy.D. ("Dr.

2    Neims").  Dr. Neims performed a psychological/psychiatric evaluation at the request of

3    the state Department of Social and Health Services (*see* Tr. 316-329).  Dr. Neims noted,

4    among other things, a history of chronic pain (Tr. 317), problems with sleeping, fatigue,

5    amotivation, anhedonia, lethargy and patterns of agoraphobia and checking behavior

6    (checking doors, locks, candles, children, appearance) (Tr. 319).  Dr. Neims noted that

7    plaintiff had marked social withdrawal with expressions of anxiety or fear and anger (Tr.

8    318).  She could not recall all three out of three items after a five-minute or a thirty-

9    minute delay, and the presence of a tremor was observed (Tr. 322).  He diagnosed anxiety

10   disorder NOS; panic attacks with agoraphobia, cluster B traits, and alcohol abuse in

11   extended reported remission (Tr. 318).  He concluded that she would have marked

12   limitations in her ability to interact with public contacts and respond appropriately to or

13   tolerate the pressures and expectations of a normal work setting (Tr. 320).  He found that

14   she would have moderate limitations on relating appropriately with coworkers and

15   supervisors and maintaining appropriate behavior *id*.).  After noting these functional

16   limitations, he opined that claimant was impaired from sustained gainful employment

17   (Tr. 324).  The ALJ rejected Dr. Neims' conclusions because they were "based on

18   claimant's subjective reports" (Tr. 33) and they were not consistent with "longitudinal

19   psychiatric treatment records," although those treatment records were unspecified by the

20   ALJ.  The ALJ adopted the mental residual functional capacity provided by reviewing

21   state agency psychologists, who concluded that claimant was "capable of simple and

22   some detailed tasks, and could concentrate on well learned tasks" (Tr. 33, *citing* Tr. 397 –

400, 475).  Also, the ALJ agreed with these state agency consultants that "claimant could work around others but not with high levels of cooperation, and that she could have superficial public contact" (id.).

PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on October 31, 2007, alleging disability since November 10, 2006.  Her application was denied initially (Tr. 104) and following reconsideration (Tr. 105).  Her requested hearing was held before Administrative Law Judge Larry Kennedy ("the ALJ") on December 11, 2009, when plaintiff appeared and testified (Tr. 51-84).  On March 26, 2010 the ALJ issued a decision finding that plaintiff was not disabled (Tr. 19-35).  On December 13, 2011, the Appeals Council denied plaintiff's request for review making the ALJ's decision to deny benefits the Commissioner's final decision (Tr. 1-6).  *See* 20 C.F.R. § 404.981.

On February 16, 2012, plaintiff filed a complaint in this court seeking judicial review of the ALJ's written decision (*see* ECF No. 1).  On April 27, 2012, defendant filed the sealed Administrative Record in this matter ("Tr.") (*see* ECF Nos. 7, 8).

In her opening brief, plaintiff challenges: (1) the ALJ's decision to reject the opinion of consulting examiner Mark Heilbrunn, M.D.; and (2) the ALJ's decision to reject the decision of opinion of examining psychiatrist Daniel Neims, Psy.D. (*see* ECF No. 10, page 1).

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not

supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 2012 U.S. App. LEXIS 6570 at *42 (9th Cir. April 2, 2012) (Dock. No. 10-16578); *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. *Molina, supra*, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009); *Stout, supra*, 454 F.3d at 1054-55.

1

<u>DISCUSSION</u>

2

**(1) The ALJ's decision to reject the opinion of consulting examiner Mark**

3

    **Heilbrunn, M.D.**

4

    As noted above, the ALJ rejected the examining physician Dr. Heilbrunn's

5

opinion that claimant only was capable of lifting five to ten pounds consistently (Tr. 32).

6

The reason the ALJ provided was that "[t]his limitation is not consistent with the

7

longitudinal record, the claimant's testimony, or her documented activities" (Tr. 32-33).

8

He states nothing more in that regard.  This is not enough.

9

    The ALJ must provide "clear and convincing" reasons for rejecting the

10

uncontradicted opinion of either a treating or examining physician or psychologist.

11

*Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Baxter v. Sullivan*, 923 F.2d

12

1391, 1396 (9th Cir. 1991); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if

13

a treating or examining physician's opinion is contradicted, that opinion "can only be

14

rejected for specific and legitimate reasons that are supported by substantial evidence in

15

the record."  *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035,

16

1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and

17

thorough summary of the facts and conflicting clinical evidence, stating his interpretation

18

thereof, and making findings." *Reddick, supra*, 157 F.3d at 725 (*citing Magallanes v.*

19

*Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). In addition, the ALJ must explain why his

20

own interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d

21

at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

22

23

24

1       Here, Dr. Heilbrunn's opinion regarding plaintiff's lifting ability was contradicted

2 by the state agency medical consultants who did not examine plaintiff, but instead

3 reviewed the record and concluded without comment that "claimant was capable of

4 lifting and carrying 20 pounds occasionally and 10 pounds frequently" (Tr. 32 (*citing* Tr.

5 402)).

6       An examining physician's opinion is "entitled to greater weight than the opinion

7 of a nonexamining physician." *Lester, supra*, 81 F.3d at 830 (citations omitted); *see also*

8 20 C.F.R. § 404.1527(d).  A non-examining physician's or psychologist's opinion may

9 not constitute substantial evidence by itself sufficient to justify the rejection of an opinion

10 by an examining physician or psychologist. *Lester, supra*, 81 F.3d at 831 (citations

11 omitted). However, "it may constitute substantial evidence when it is consistent with

12 other independent evidence in the record." *Tonapetyan, supra*, 242 F.3d at 1149 (*citing*

13 *Magallanes, supra*, 881 F.2d at 752).  "In order to discount the opinion of an examining

14 physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set

15 forth specific, *legitimate* reasons that are supported by substantial evidence in the

16 record." *Van Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester,*

17 *supra*, 81 F.3d at 831).

18       Here, the ALJ did not even attempt to do that.  Instead, the ALJ simply referenced

19 the opinion of the state agency medical consultant's opinion and the "longitudinal record"

20 without providing specific and legitimate reasons that are supported by substantial

21 evidence in the record.  This is legal error.

1     Additionally, the ALJ implied that he accepted Dr. Heilbrunn's opinion that

2  because of her back condition, plaintiff could stand or walk only up to 20 minutes at a

3  time for five hours in an eight-hour day and sit for 20 minutes uninterrupted for up to five

4  or six hours in an eight hour day (Tr. 32 (*citing* Tr. 379)).  But then, the ALJ based his

5  conclusions regarding plaintiff's RFC on the assumption that she could "stand and/or

6  walk (with normal breaks) for a total of about two hours in any eight-hour workday . . .

7  and sit (with normal breaks) for a total of about six hours in an eight-hour workday" (Tr.

8  26).  These conclusions are not consistent with Dr. Heilbrunn's conclusions.

9     According to Social Security Ruling ("SSR") 96-8p, a residual functional capacity

10  assessment by the ALJ "must always consider and address medical source opinions. If the

11  RFC assessment conflicts with an opinion from a medical source, the adjudicator must

12  explain why the opinion was not adopted." *See* SSR 96-8p, 1996 SSR LEXIS 5 at *20.

13  Although "Social Security Rulings do not have the force of law, [n]evertheless, they

14  constitute Social Security Administration interpretations of the statute it administers and

15  of its own regulations." *See Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir.

16  1989) (*citing Paxton v. Sec. HHS*, 865 F.2d 1352, 1356 (9th Cir. 1988)) (internal citation

17  and footnote omitted). As stated by the Ninth Circuit, "we defer to Social Security

18  Rulings unless they are plainly erroneous or inconsistent with the [Social Security] Act or

19  regulations." *Id.* (*citing Chevron USA, Inc. v. NRDC, Inc.*, 467 U.S. 837, 842-45 (1984);

20  *Paxton, supra*, 865 F.2d at 1356).

1    In addition, the Social Security Regulations provide specific guidance regarding

2    the evaluation of a person's limitations with respect to standing/walking and sitting.  SSR

3    83-12 provides:

4         1. Alternate Sitting and Standing
               In some disability claims, the medical facts lead to an assessment
5         of RFC which is compatible with the performance of either sedentary or
          light work except that the person must alternate periods of sitting and
6         standing. The individual may be able to sit for a time, but must then get
          up and stand or walk for awhile before returning to sitting. Such an
7         individual is not functionally capable of doing either the prolonged
          sitting contemplated in the definition of sedentary work (and for the
8         relatively few light jobs which are performed primarily in a seated
          position) or the prolonged standing or walking contemplated for most
9         light work. (Persons who can adjust to any need to vary sitting and
          standing by doing so at breaks, lunch periods, etc., would still be able to
10        perform a defined range of work.). . .  [M]ost jobs have ongoing work
          processes which demand that a worker be in a certain place or posture
11        for at least a certain length of time to accomplish a certain task.
          Unskilled types of jobs are particularly structured so that a person cannot
12        ordinarily sit or stand at will. In cases of unusual limitation of ability to
          sit or stand, a VS [vocational specialist] should be consulted to clarify
13        the implications for the occupational base.

14   SSR 83-12, 1983 LEXIS SSR 32.

15
16        Here, the ALJ didn't do that and because he did not consult a vocational specialist

17   on this issue, the ALJ failed comply with this Social Security Regulation as well as with

18   SSR 96-8p.  Instead, he again, without comment, accepted the state agency consultants'

19   opinions that she was capable of standing and walking for a total of about two hours in an

20   eight-hour day and sitting for about six hours in an eight-hour day (Tr. 32 (*citing* Tr.

21   402)).  For the same reasons provided above, the Court concludes that the ALJ failed to

22   provide specific and legitimate reasons for rejecting the examining doctor's opinions and

23   accepting the non-examining, reviewing doctors' opinions.  The ALJ did not consult a

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 10

VS regarding what jobs, if any, would be available with limitations in her ability to stand/walk or to sit with interruptions, and did not reject these opined limitations adequately.  Therefore, this matter should be remanded for further findings.

**(2) The ALJ's decision to reject the opinion of examining psychologist Daniel Neims, Psy.D.**

The Court notes that Dr. Neims is the only psychologist who performed a mental status examination.  He prepared an extensive report and attached his test results (*see* Tr. 316 – 29).  He concluded that plaintiff had marked limitations in her ability to interact in public contacts and respond appropriately to and tolerate the pressures and expectations of a normal work setting and that she would have moderate limitation in other areas, including relating appropriately to co-workers and supervisors, caring for her personal hygiene and controlling her physical or motor movements (Tr. 320).

The ALJ chose to reject these conclusions in favor of the conclusions from reviewing, non examining, state psychologists.  The ALJ, without elaboration, stated that he did so because Dr. Neim's opinions were based on "claimant's subjective reports" and that "the alleged social limitations are not corroborated by evidence of record" nor consistent with "longitudinal psychiatric treatment records" which he concluded showed that her symptoms were "attributable to transient stressors"  (Tr. 33).

Simply stating that Dr. Neim's conclusions were based on claimant's subjective reports is not adequate, and in this case, not accurate.  The Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of

conversation. The Mental Status Examination allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). "Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation." *Id.* at 4 (emphasis in original).  That is exactly what Dr. Neims did in this case.

The Mental Status Examination generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" Trzepacz, *supra*, The Psychiatric Mental Status Examination 3. A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (*id.* at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be unaware that her "condition reflects a potentially serious mental illness." *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

Nor can the ALJ rely on "longitudinal records" without explaining what records he relied upon to reach his conclusions.  When an ALJ seeks to discredit a medical opinion, he must explain why his own interpretations, rather than those of the doctors, are correct. *See Reddick, supra*, 157 F.3d at 725; *see also Blankenship, supra*, 874 F.2d at 1121 ("When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The

report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation") (*quoting Poulin v. Bowen*, 817 F.2d 865, 873074 (D.C. Cir. 1987)).

For these reasons, as well as the reasons set forth above regarding Dr. Heilbrunn's opinions, this Court recommends that this matter be remanded for further findings. The errors were harmful and the entire five-step sequential disability evaluation process should be evaluated anew.

<u>CONCLUSION</u>

Based on the stated reasons, and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration. **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on January 4**,** 2013, as noted in the caption.

Dated this 10th day of December, 2012.

J. Richard Creatura
United States Magistrate Judge